# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLEASANT SEA VIEW, INC., | ) | |
| D/B/A CERTIFIED SALES | ) | |
| | ) | |
| Plaintiff | ) | Civil Action |
| v. | ) | No. 05-CV-281 ML |
| | ) | |
| BLACKADAR MARINE INSURANCE | ) | |
| AGENCY, INC. | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO PLAINTIFF

Defendant Blackadar Marine Insurance Agency, Inc. ("BMIA"), by and through its counsel, Tompkins, Clough, Hirshon & Langer, P.A., and Goldenberg & Muri LLP, and pursuant to Rule 34, F.R.Civ.P., hereby requests that Plaintiff Pleasant Sea View, Inc., d/b/a Certified Sales, produce for inspection and copying at the offices of Tompkins, Clough, Hirshon & Langer, Three Canal Plaza, Portland, Maine, on Tuesday, January 17, 2005, at 10:00 A.M. the documents hereinafter requested.

## DEFINITIONS

A. "Relate To" is used in its most comprehensive sense and includes not only documents which contain, or in which explicit reference is made to, the subject of the inquiry, but also documents in which the subject matter is in any way considered or in which other documents or conversations bearing on the subject are considered.

B. "Document or Documents" means any written, recorded, filmed or graphic matter, whether produced or reproduced or on paper, cards, tapes, film, electronic facsimile, computer storing devices or any other media, including, but not limited to, papers, books,

tabbies EXHIBIT A

letters, photographs, objects, tangible things, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, records, work papers, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or other meetings, affidavits, statements, charts, graphs, specifications, drawings, blueprints, summaries, opinions, proposals, reports, studies, analyses, audits, evaluations, contracts, agreements, journals, statistical records, ledgers, books of account, bookkeeper entries, financial statements, tax returns, vouchers, checks, check stubs, invoices, receipts, desk calendars, appointment books, diaries, lists, tabulations, summaries, sound recordings, computer printouts, data processing reports and output, microfilms, all records kept by electronic, photographic or mechanical means, and all things similar to any of the foregoing however denominated. Different versions of the same document (e.g. copies of a printed document with different handwritten notations and superseded drafts) are different documents within the meaning of the term as used herein.

C. "Communication" refers to any transmittal of information or request for information, by document, or otherwise, and includes any conversation in person, by telephone or by any other means.

D. "Parties". The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

E. "Person". The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

F. "Concerning". The term "concerning" means referring to, describing, evidencing, or constituting.

G. If privilege is claimed with regard to any of the documents sought herein, please furnish the following information with regard to the claim:

i. the precise nature of the privilege claimed;

ii. the reasons for claiming the privilege;

iii. please identify each document by general title or description, date of creation, or acquisition, and the author; and

iv. if the claim of privilege relates to information obtained from a client, informant or witness, please identify the client, informant or witness by full name, home address and business address.

## REQUESTS

1. A copy of the Articles of Incorporation for Pleasant Sea View, Inc.

2. Any and all insurance policies purchased by Plaintiff during the period 2000 – present, including, but not limited to, policies of insurance providing coverage for Plaintiff's various facilities, including, but not limited to, Mendon, MA and Warwick, RI.

3. Any and all applications for insurance coverage at Plaintiff's various facilities, including, but not limited to, Mendon, MA and Warwick, RI, during the period 1995 to the present.

4. Any and all documents upon which Plaintiff relies for the allegation that BMIA was Plaintiff's "sole and exclusive agent and broker for" Plaintiff's marine and business insurance.

5. Any and all communications between BMIA, or anyone acting on its behalf, and Plaintiff, or anyone acting on its behalf, during the period January 1, 2000 to the present.

6. Any and all documents, including, but not limited to, notes, drafts, electronic recordings, or other materials generated by Plaintiff, or anyone acting on its behalf, relating

to communications between BMIA and Plaintiff during the period January 1, 2000 to the present.

7. Any and all communication between BMIA and Plaintiff relating to Plaintiff's inventory, at any location, including, but not limited to Mendon, MA and Warwick, RI, during the period January 1, 2000 to the present.

8. Any and all documents relating to Plaintiff's acquisition of a 62 foot Sunseeker yacht, including but not limited to the bill of sale, which formed the basis of a portion of Plaintiff's claim arising out of a fire on or about July 2, 2003 at Plaintiff's Warwick, RI facility.

9. Any and all documents relating to Plaintiff's efforts to sell the 62 foot Sunseeker yacht which formed the basis of a portion of Plaintiff's claim arising out of a fire on or about July 2, 2003 at Plaintiff's Warwick, RI facility.

10. Any and all documents relating to Plaintiff's acquisition of a 48 foot Ocean motor yacht, including but not limited to the bill of sale, which formed the basis of a portion of Plaintiff's claim arising out of a fire on or about July 2, 2003 at Plaintiff's Warwick, RI facility.

11. Any and all documents relating to Plaintiff's efforts to sell the 48 foot Ocean motor yacht which formed the basis of a portion of Plaintiff's claim arising out of a fire on or about July 2, 2003 at Plaintiff's Warwick, RI facility.

12. Any and all documents relating to Plaintiff's acquisition of a 45 foot Nelson Merek yacht, including but not limited to the bill of sale, which formed the basis of a portion of Plaintiff's claim arising out of a fire on or about July 2, 2003 at Plaintiff's Warwick, RI facility.

13. Any and all documents relating to Plaintiff's efforts to sell the 45 foot Nelson Merek yacht which formed the basis of a portion of Plaintiff's claim arising out of a fire on or about July 2, 2003 at Plaintiff's Warwick, RI facility.

14. Any and all policies of insurance maintained by Plaintiff which covered, in whole or in part, the 62 foot Sunseeker yacht, and/or the 48 foot Ocean motor yacht, and/or the 45 foot Nelson Merek yacht on July 2, 2003.

15. Any and all policies of insurance maintained by Plaintiff, or anyone acting on its behalf, which covered, in whole or in part, the 62 foot Sunseeker yacht, and/or the 48 foot Ocean motor yacht, and/or the 45 foot Nelson Merek yacht during the period 2000 to July 2, 2003.

16. Any and all communications between Plaintiff, or anyone acting on its behalf, and BMIA, or anyone acting on its behalf, relating to Plaintiff's fire loss on July 2, 2003 at Plaintiff's Warwick, RI facility.

17. Any and all communications between Plaintiff, or anyone acting on its behalf, and any third party relating to Plaintiff's fire loss on July 2, 2003 at Plaintiff's Warwick, RI facility.

18. Any and all communications between Plaintiff, its servants or agents, and Great American Insurance Company relating to Plaintiff's fire loss on July 2, 2003.

19. Any and all documents relating to Policy No. OMH870-25-27 issued by Great American Insurance Company.

20. Any and all documents relating to communications between Plaintiff, or anyone acting on its behalf, and BMIA, or anyone acting on its behalf, at any time.

21. Any and all documents relating to Plaintiff's fire loss on July 2, 2003 at Plaintiff's Warwick, RI facility.

22. Any and all documents relating to loans or other financing arrangements made by Hometown Bank to Plaintiff and covering the 62 foot Sunseeker yacht, the 48 foot Ocean motor yacht, and/or the 45 foot Nelson Merek yacht.

23. Any and all documents upon which Plaintiff relies for its allegation that BMIA "breached its agreement with Certified Sales", as more fully set forth in Paragraph 19 of Plaintiff's Complaint.

24. Any and all documents upon which Plaintiff relies for its claim that BMIA was negligent, and that such negligence was the "direct and proximate" cause of Plaintiff's damages in this matter.

25. Any and all documents upon which Plaintiff relies for its claim of damages in this matter.

26. Any and all documents upon which Plaintiff relies for its claim that BMIA "would formulate an insurance program and cause the necessary policy or policies to be written and issued in types, forms and amounts sufficient to give plaintiff full protection against risks, including, among others, property loss and/or damage associated with its boat dealership", as more fully set forth in Paragraph 28 of Plaintiff's Complaint.

27. Any and all documents upon which Plaintiff relies for its claim that BMIA "knew that Certified Sales was relying on defendant to procure adequate insurance, and that plaintiff's officers and employees were unlearned in insurance matters", as more fully set forth in Paragraph 29 of Plaintiff's Complaint.

28. Any and all documents upon which Plaintiff relies for its claim that BMIA "knew or should have known the amounts of coverage necessary to fully protect plaintiff's inventory in the event of damage or loss", as more fully set forth in Paragraph 30 of Plaintiff's Complaint.

29. Any and all documents upon which Plaintiff relies for its claim that BMIA "represented to Certified Sales that its insurance provided plaintiff with sufficient coverage for property loss and/or damage", as more fully set forth in Paragraph 31 of Plaintiff's Complaint.

30. Any and all documents upon which Plaintiff relies for its claim that it "relied upon Blackadar's assurances and was led to believe that the Policy, as amended in January, 2003, satisfied all of its insurance requirements, providing coverage necessary to fully protect plaintiff's inventory in the event of damage or loss", as more fully set forth in Paragraph 32 of Plaintiff's Complaint.

31. Any and all documents relating to claims made by Plaintiff pursuant to any policy of insurance during the period 2000 to the present.

December 14, 2005

BLACKADAR MARINE INSURANCE AGENCY, INC.

By its Counsel:

/s/ Leonard W. Langer, Esq.

Tompkins, Clough, Hirshon
& Langer, P. A.
Three Canal Plaza
P. O. Box 15060
Portland, ME 04112-5060
Tel: 207-874-6700
Fax: 207-874-6705
lwlanger@tchl.com

/s/ Barbara S. Cohen, Esq. (2848)

Goldenberg & Muri LLP
Ten Weybosset St.
Providence, RI 02903
Tel: 401-421-7300
Fax: 401-421-7352
bsc@goldenberg-muri.com

**CERTIFICATE OF SERVICE**

I, Leonard W. Langer, hereby certify that on December 14, 2005, I electronically served the within document by electronically mailing and mailing by First Class Mail, postage prepaid, a copy of the within document to Norman A. Peloquin II, Esq., Norman A. Peloquin, II P.C., 16 Main Road, P.O. Box 65, Adamsville, RI 02801, counsel for Plaintiff.

/s/ Leonard W. Langer

Blackadar/Cert. Sales
BMIA RFPD to Plt