# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLEASANT SEA VIEW, INC., D/B/A CERTIFIED SALES | ) | |
| Plaintiff | ) | Civil Action |
| v. | ) | No. 05-CV-281 ML |
| BLACKADAR MARINE INSURANCE AGENCY, INC. | ) | |
| Defendant | ) | |

## DEFENDANT BLACKADAR MARINE INSURANCE AGENCY, INC.'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant Blackadar Marine Insurance Agency, Inc. ("Blackadar"), by and through its counsel, Tompkins, Clough, Hirshon & Langer, P.A., and Goldenberg & Muri LLP, and pursuant to Rule 56, F.R. Civ. P., and LR Cv 7 and 56, Local Rules of the United States District Court for the District of Rhode Island, moves for summary judgment in its favor on all counts of the Complaint.

In support of its Motion, Blackadar states that there is no genuine issue of material fact and that Blackadar is entitled to judgment as a matter of law, as more fully set forth in its accompanying Memorandum of Law.

Blackadar relies on the pleadings, the accompanying Affidavit of Martha J. Blackadar, and the Deposition of Ronald Bethel, with exhibits, as cited in the accompanying Statement of Undisputed Facts.

Pursuant to the provisions of LR Cv 7(e), Local Rules of the United States District Court for the District of Rhode Island, Defendant Blackadar Marine Insurance Agency, Inc. requests oral argument on this motion.

Dated this 14th day of July, 2006

BLACKADAR MARINE INSURANCE AGENCY, INC.

By its Counsel:

Leonard W. Langer, Esq.

Tompkins, Clough, Hirshon
& Langer, P. A.
Three Canal Plaza
P. O. Box 15060
Portland, ME 04112-5060
Tel: 207-874-6700
Fax: 207-874-6705
lwlanger@tchl.com

Barbara S. Cohen, Esq. (2848)

Goldenberg & Muri LLP
Ten Weybosset Street
Providence, RI 02903
Tel: 401-421-7300
Fax: 401-421-7352
bsc@goldenberg-muri.com

**CERTIFICATE OF SERVICE**

I, Barbara S. Cohen, hereby certify that on July 14, 2006, I served the within document by mailing by First Class Mail, postage prepaid, a copy of the within document to Norman A. Peloquin II, Esq., Saunders & Saunders LLP, Bank of America Building, 700 Pleasant St., 5th Fl., New Bedford, MA 02740, counsel for Plaintiff.

Barbara S. Cohen

Barbara S. Cohen, Esq. (2848)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLEASANT SEA VIEW, INC.,<br>D/B/A CERTIFIED SALES<br><br>Plaintiff<br>v.<br><br>BLACKADAR MARINE INSURANCE<br>AGENCY, INC.<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br>No. 05-CV-281 ML |

**DEFENDANT BLACKADAR MARINE INSURANCE AGENCY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant Blackadar Marine Insurance Agency, Inc. ("Blackadar"), by and through its counsel, Tompkins, Clough, Hirshon & Langer, P.A., and Goldenberg & Muri LLP, and pursuant to LR Cv 7(a) and 56, Local Rules of the United States District Court for the District of Rhode Island, submits the following Memorandum of Law in support of its Motion for Summary Judgment.

## FACTUAL BACKGROUND

In this case Plaintiff Pleasant Sea View, Inc., D/B/A Certified Sales ("Certified Sales") has sued Blackadar for breach of contract (Count I), negligence (Count II) and breach of fiduciary duty (Count III).

The relevant facts are set forth in Blackadar's accompanying Statement of Undisputed Facts. To briefly summarize: Plaintiff, Pleasant Sea View, Inc., D/B/A Certified Sales ("Certified Sales") buys and sells used boats. Its principal locations are in Warwick, Rhode Island and Mendon, Massachusetts. Throughout the time it procured

insurance through Blackadar, a broker, Certified Sales had blanket boat dealer's coverage for all vessels at the two facilities, as opposed to maintaining separate insurance on each boat. The aggregate limit for all vessels at the Warwick facility was at times as low as $100,000.00 and never exceeded $300,000.00, despite Blackadar's frequent warnings that Certified Sales appeared to be underinsured. Certified Sales repeatedly rejected Blackadar's recommendations to increase the policy limits.

As set forth in Certified Sales' Complaint, on July 2, 2003, a fire at the Warwick facility damaged or destroyed three vessels – a 62-foot Sunseeker motor yacht, a 48-foot Ocean motor yacht, and a 45-foot Nelson Marek sailboat. Certified Sales filed a claim with its insurance carrier seeking the aggregate amount of $514,444.60. Pursuant to the terms of the applicable insurance policy, Certified Sales received $316,492.50 from the underwriter (Great American Insurance Companies), representing "in pertinent part, the $300,000.00 policy limit under the aforesaid boat dealer's policy … ." (Complaint, ¶16). After the fire, Certified Sales complained that it did not have sufficient insurance to cover the entire loss. In fact, Certified Sales had precisely the amount of coverage it had requested and was willing to pay for.

Certified Sales complains in particular that Blackadar should have made sure that the Ocean and the Sunseeker were fully insured. Certified Sales, however, never sought independent coverage for either vessel while they were at the Warwick facility. Indeed, Certified Sales requested that the *aggregate* limit on the boat dealer's coverage for all vessels in Warwick be increased from $100,000.00 to $250,000.00 so as to accommodate the Ocean. This was done in June of 2001, more than two years before the fire. When Blackadar pointed out that this amount of insurance seemed barely sufficient to cover a

total loss of the Ocean (which Certified Sales valued at around $250,000.00), Certified Sales grudgingly agreed to increase the Warwick limit to $300,000.00, while rejecting Blackadar's recommendation of an increase to $500,000.00.

As for the Sunseeker, Blackadar agreed merely to procure additional coverage for the transport of the vessel from New York to Rhode Island, which is what Certified Sales requested. This was necessary because the policy's limit for any vessel while in transit was only $150,000.00, and the vessel was valued at $330,000.000. Having just increased the boat dealer's limit for the Warwick facility four months earlier, Certified Sales was well aware that if it kept the Sunseeker in Warwick, the blanket limit would still be $300,000.00. Blackadar made it perfectly clear to Certified Sales that the additional insurance procured for the Sunseeker (for which an additional premium of only $100.00 was charged) covered only transportation. Certified Sales was satisfied with this arrangement, because that was all the coverage it wanted at the time.

## ARGUMENT

### 1. Standards

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Lifespan/Physicians Professional Services Organization, Inc. v. Combined Insurance Co. of America*, 345 F. Supp. 2d 214, 223 (D. R. I. 2004). Once this is done, Rule 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A material fact is one affecting the lawsuit's outcome. *Id.*; *URI Cogeneration Partners, L.P. v. Board of Governors for Higher Education*, 915 F. Supp. 1267, 1279 (D.R.I.

1996). Factual disputes are genuine when, based on the evidence presented, a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

To prevail on a motion for summary judgment on a particular count of a complaint, the movant must show that "there is an absence of evidence to support" the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on its pleadings but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. *Oliver v. Digital Equipment* Corp., 846 F.2d 103, 105 (1st Cir. 1988); *Lifespan*, 345 F. Supp. 2d at 223.

### 2. **Blackadar is Entitled to Judgment as a Matter of Law on all Counts of the Complaint.**

Certified Sales has sued Blackadar for breach of contract (Count I), negligence (Count II) and breach of fiduciary duty (Count III). All claims arise from allegations that Blackadar failed to procure sufficient insurance to cover the vessel damage arising from the fire of July 2, 2003. Certified Sales' theory of liability seems to be that an insurance broker has a duty to force unwanted insurance on an unwilling customer if, in hindsight, such insurance would have covered a loss. Such a theory, which would turn brokers into insurers (and unlimited insurers, at that), has no support in the law.

On the contrary, it is clear from *Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203 (R.I. 1994), that a broker is not liable for failing to procure specified coverage unless it had actually agreed to obtain such coverage.[1] There, the

---

[1] In this diversity action, the substantive law of Rhode Island applies. *See, e.g.*, *Umsted v. Umsted*, 446 F.3d 17, 20 (1st Cir. 2006); *Buckley v. Brown Plastics Machinery, LP*, 368 F. Supp. 2d 167, 169 (D.R.I. 2005).

plaintiff's yacht was damaged in a race to Bermuda. *Id.* at 204. The insurer denied coverage on the ground that the Bermuda trip involved extra-territorial travel for which coverage was excluded absent purchase of a special rider. *Id.* The insured claimed that it had requested the rider from its broker and that the broker was liable for failing to procure it. *Id.* at 205. The insured had procured such riders through the broker on two prior occasions. However, an officer of the insured testified that on this occasion when he called the broker with the intent of requesting the rider, the account manager was not in. Therefore, the officer simply left a message with someone else at the broker's office. *Id.* The officer testified that he stated that he needed coverage for the Bermuda race and was told that the account manager would call him back – though the account manager never did. *Id.* The trial court denied the broker's motion for a directed verdict, and the jury returned a verdict against the broker. *Id.*

Reviewing the evidence in the light most favorable to the insured, the Rhode Island Supreme Court reversed. *Id.* at 206. Although the court acknowledged "a long-standing relationship between the parties and a pattern of dealings in which procurement of coverage was accomplished in a very informal manner," this could not overcome the fact that the insured did not "expressly" direct the broker to procure coverage for the Bermuda race. *Id.* Additionally, no employee of the broker expressly or impliedly agreed to procure such coverage. *Id.* at 207. This omission was significant, because "for the agent to be liable, ... it must be demonstrated that the agent has undertaken to provide coverage." *Id., quoting Bramson v. Chester L. Jordan & Co.*, 379 A.2d 730, 732 (Me. 1977). Because no legal duty arose absent the broker's agreement to procure specific coverage, the court held that the insured's negligence claim failed as a matter of law.

The court also rejected the insured's claim of a breach of fiduciary duty. *Id.* at 208. The court questioned whether a fiduciary relationship between an insurance broker and its customer could arise in the first place. *See id., citing Stockett v. Penn Mutual Life Insurance Co.*, 82 R. I. 172, 177, 106 A.2d 741, 744 (1954) ("ordinarily an insurance company stands in no fiduciary relationship to a legally competent applicant"). Even if the court were to recognize such a relationship, however, it held that no duty would arise "in the absence of an unequivocal request from [the insured] to an authorized person to procure coverage." *Id.*

Finally, the court rebuffed the insured's contract claim. Contract formation in the insured-broker context consists of the client's instruction to procure coverage (the offer) and the broker's agreement to procure such coverage (the acceptance). *See id.* Since the plaintiff's communication with the broker did not amount to an express request for coverage, neither did it constitute an offer. *Id.* Moreover, even if there had been an offer, the broker never communicated its acceptance, which could not be inferred from silence. *Id.* at 208-09.

*Kenney* is controlling. There is even less to support Certified Sales' claims than there was in *Kenney*, where the plaintiff at least expressed some desire to obtain coverage for the Bermuda race. In contrast, Certified Sales never even suggested that it wanted independent insurance for either the Ocean or the Sunseeker beyond the blanket coverage for all boats at the Warwick facility and the transportation coverage for the Sunseeker.

Moreover, Certified Sales could not possibly have assumed that the transportation insurance for the Sunseeker amounted to full and independent coverage for that yacht once it arrived in Warwick. First, both the binder and the policy itself made it clear that

coverage was limited to transportation from New York to Rhode Island. An insured has a duty to review its policies and cannot claim ignorance of the terms of a policy it had in its files months before the date of loss. *See, e.g.*, *Fay v. Aetna Life Insurance & Annuity Co.*, 307 F. Supp. 2d 284, 291-92 (D. Mass. 2004); *Wilmering v. Lexington Insurance* Co., 678 S. W.2d 865, 871-72 (Mo. App. 1984). Second, the transportation insurance entailed an additional premium of only $100.00. Certified Sales was well aware that each increase in the blanket coverage for all vessels at the Warwick facility by $50,000.00 or $100,000.00 entailed a premium increase of hundreds of dollars. If Certified Sales were purchasing full coverage on a $330,000.00 vessel in Warwick, thereby more than doubling the policy limit for all boats in Warwick, the premium obviously would have exceeded $100.00.

Certified Sales was further aware that the policy limit for all boats at the Warwick facility was $300,000.00. Not only did it fail to request an increase in that limit, but it affirmatively rejected Blackadar's repeated recommendations to increase the level of coverage. It is illogical (if not hypocritical) for Certified Sales now to blame Blackadar for failing to obtain additional insurance which Certified Sales specifically instructed Blackadar *not* to obtain. In any event, Blackadar did not agree to obtain such additional coverage and, therefore, cannot be liable for failing to procure it.

**<u>CONCLUSION</u>**

There is simply no evidence to support Plaintiff's claims in this matter, and, therefore, the Court should grant Blackadar's Motion for Summary Judgment and enter judgment in favor of Blackadar on all counts of the Complaint.

Dated this 14th day of July, 2006

BLACKADAR MARINE INSURANCE AGENCY, INC.

By its Counsel:

Leonard W. Langer, Esq.

Tompkins, Clough, Hirshon
& Langer, P. A.
Three Canal Plaza
P. O. Box 15060
Portland, ME 04112-5060
Tel: 207-874-6700
Fax: 207-874-6705
lwlanger@tchl.com

Barbara S. Cohen, Esq. (2848)

Goldenberg & Muri LLP
Ten Weybosset Street
Providence, RI 02903
Tel: 401-421-7300
Fax: 401-421-7352
bsc@goldenberg-muri.com

**CERTIFICATE OF SERVICE**

I, Barbara S. Cohen, hereby certify that on July 14, 2006, I served the within document by mailing by First Class Mail, postage prepaid, a copy of the within document to Norman A. Peloquin II, Esq., Saunders & Saunders LLP, Bank of America Building, 700 Pleasant St., 5th Fl., New Bedford, MA 02740, counsel for Plaintiff.

Barbara S. Cohen, Esq. (2848)